IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Cecil Allen Simmons, #177634, | ) |
| Plaintiff, | ) Civil Action No. 6:08-860-RBH-WMC |
| vs. | ) **REPORT OF MAGISTRATE JUDGE** |
| Director Jon Ozmint, Captain Brihart, Hearing Officer Debra Row, Warden Stan Burtt, in their individual capacities, | ) |
| Defendants. | ) |

This matter is before the court on the defendants' motion for summary judgment (doc. 78). In his complaint, the plaintiff, a state prisoner proceeding *pro se*, alleges his Eighth Amendment rights were violated because he had to wear a pink jumpsuit for one year as a result of a sexual misconduct disciplinary infraction during his incarceration at Lieber Correctional Institution in the South Carolina Department of Corrections ("SCDC").

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On February 9, 2009, the defendants filed a motion for summary judgment. By order filed February 11, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed

his "motion to dismiss the defendants' motion for summary judgment" (doc. 85) on March 9, 2009.

## FACTS PRESENTED

The plaintiff is an inmate currently serving a combined 45-year sentence for kidnaping and criminal sexual conduct in the first degree. He is currently incarcerated at Ridgeland Correctional Institution. On December 2, 2006, while incarcerated at Lieber Correctional Institution, he was charged with a violation of the SCDC inmate disciplinary policies. Specifically, the plaintiff was charged with sexual misconduct for masturbating in front of a female corrections officer. The plaintiff was formally notified of the charge on December 7, 2006, and placed in pre-hearing detention pending an inmate disciplinary hearing. On December 20, 2006, the plaintiff was provided with a hearing before a neutral Disciplinary Hearing Officer, Deborah Rowe. This hearing was recorded, and the plaintiff was allowed to present testimony in his defense. He was subsequently convicted of the disciplinary violation and sentenced by the hearing officer. As a result of the conviction, the plaintiff was penalized with 90 days of disciplinary detention, loss of 180 days of canteen privileges, loss of 180 days of telephone privileges, 365 days suspension of visitation privileges, and docked 90 days of good time credit (Stanley B. Burtt, Jr. aff. ¶¶ 1-15). According to the testimony of former Warden Stanley B. Burtt, Jr., the plaintiff has a long history of disciplinary violations, including recurrent episodes of public masturbation and exhibitionism (*id.* ¶9, ex. A. at 7).

The plaintiff claims that after he was charged with sexual misconduct on December 2, 2006, he was placed in a cold holding cell for three nights without his shoes and jacket and without a bed or mat (comp. 3).

Subsequent to release from disciplinary detention, the plaintiff was placed in the general inmate population. Pursuant to the terms of SCDC disciplinary policy, the

2

plaintiff was assigned to wear a pink-colored jumpsuit for 365 days following his release from disciplinary detention (*id.* ¶¶ 24-26). According to former Warden Burtt, pursuant to inmate disciplinary policy, inmates convicted of sexual misconduct were required to wear a pink jumpsuit for a period of 90 days for their first conviction and one year for any subsequent convictions. Inmates confined to disciplinary detention are assigned to wear yellow jumpsuits. Accordingly, inmates assigned to wear the pink jumpsuits cannot begin their time in the pink jumpsuits until their release from disciplinary detention. The pink jumpsuit requirement is not a discretionary punishment determined by the hearing officer but is a requirement of policy. The charge and conviction at issue here was the 30th time the plaintiff had been convicted of sexual misconduct (*id.* ¶¶ 24-26).

The plaintiff claims that he was subsequently transferred to Ridgeland Correctional Institution where, because he was assigned to wear a pink jumpsuit, he was on lockdown beginning at 3:30 p.m. (comp. 6). According to the testimony of former Warden Burtt, such restrictions on movements of inmates assigned to wear pink jumpsuits furthers the goal of increasing institutional security and safety as these inmates need extra supervision and observation by corrections staff. As typically day shifts have the largest number of staff working, additional restrictions on movements of inmates are needed during the evening shift. However, despite the increased restrictions, inmates assigned to wear pink jumpsuits may still use the medical facilities and library, perform work assignments, participate in recreation, and perform other functions consistent with their custody and classification. Participation in such activities is not allowed following lock-down after the evening meal, which former Warden Burtt testified increases institutional security and reduces the supervisory burden on the evening staff (Burtt aff. ¶¶ 32-37).

According to the affidavit of Jon Ozmint, the Director of the SCDC, inmates who are placed in the pink jumpsuits are able to work, earn good time credits, have visitation, and attend educational programming, a custody status far less restrictive than

housing in a segregation unit (Jon Ozmint aff. ¶ 29). Former Warden Burtt testified that inmates at Lieber, and he believed as well at Ridgeland, who are assigned to wear pink jumpsuits may earn work credits within their dorms (Burtt. aff. ¶23). Director Ozmint and former Warden Burtt both testified that the pink jumpsuits serve an important security and safety purpose designed to protect SCDC employees, inmates, and visitors from sexual assault and indecent exposure (Ozmint aff. ¶¶ 11-40; Burtt aff. ¶¶ 32-45).

The plaintiff filed the instant lawsuit alleging that his due process rights have been violated and that he has been subjected to cruel and unusual punishment. He seeks $500,000 in damages and to have the disciplinary conviction vacated and the punishment removed. The plaintiff named as defendants Mr. Burtt, the former Warden of Lieber; Director Ozmint; Deborah Rowe, the Disciplinary Hearing Officer who found the plaintiff guilty of the sexual misconduct disciplinary violation at issue in this lawsuit; and Captain Brihart of the SCDC.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

*Due Process*

The defendants argue that any procedural due process claim fails as a matter of law. This court agrees. The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property without due process of law." U.S. Const.

5

amend. XIV. "In determining whether state officials have deprived an inmate, such as Conner, of a procedurally protected 'liberty,' this Court traditionally has looked either (1) to the nature of the deprivation (how severe, in degree or kind) or (2) to the State's rules governing the imposition of that deprivation (whether they, in effect, give the inmate a 'right' to avoid it)." *Sandin v. Conner*, 515 U.S. 472, 493 (1995) (Breyer, J. and Souter, J., dissenting). "To prevail on either procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property by governmental action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

There is no evidence that the inmate disciplinary procedure utilized in this case in any way violated the procedural due process requirements of the Constitution. The South Carolina Supreme Court has recognized that the SCDC administrative disciplinary procedures comply with constitutional due process requirements. *Al-Shabazz v. State*, 527 S.E.2d 742, 752 (S.C. 2000) ("Department's disciplinary and grievance procedures are consistent with the standards delineated by the Supreme Court in *Wolff v. McDonnell*.").

In this case, the plaintiff was provided with all of the procedural due process requirements of *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974), and its progeny. The plaintiff was provided with a pre-hearing notice of his charge. He was provided with the opportunity to utilize the assistance of a counsel substitute for presenting a defense. The plaintiff had a right to call witnesses on his behalf. His hearing was held before a neutral hearing officer designated to review inmate disciplinary charges. The hearing was recorded on an audiocassette to preserve a record for appellate review. The plaintiff was provided with a written disposition of the charges against him, and he was advised by the hearing officer of his right to appeal (Deborah Rowe aff. ¶¶ 8-13; Burtt aff. ¶¶ 11-21, ex. A at 9-10). The plaintiff appealed his conviction to former Warden Burtt on December 29, 2006. Former Warden Burtt denied the appeal and notified the plaintiff of his right to additional appellate review on January 24, 2007. According to Burtt, the plaintiff appealed the

6

decision on February 1, 2007, and received a written response on June 22, 2007. The plaintiff then filed an appeal to the administrative law court (Burtt aff. ¶ 20). Clearly the plaintiff had more than ample avenues for appellate review of his conviction, including the right to appeal to the circuit court and appellate courts of South Carolina. Based upon the foregoing, the plaintiff's bald allegations of a procedural due process violation fail, and this claim should be dismissed.

***Eighth Amendment***

The plaintiff alleges that because he was assigned to wear a pink-colored jumpsuit for 365 days following his release from disciplinary detention the defendants "put [his] life in danger by attacks by other inmates and staff members on [his] manhood" (comp. at 9).

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). What must be established with regard to each component "varies according to the nature of the alleged constitutional violation." *Hudson v. McMillian,* 503 U.S. 1, 5 (1992).

The "appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'" *Id.* The deliberate indifference standard "is appropriate because the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns." *Id.* at 6. The same is generally true with other conditions cases because there are no competing administrative concerns.

7

The Supreme Court has recognized that the deliberate indifference standard is generally not applicable in security-related cases where there are competing administrative concerns. The Court has recognized that "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Id.* In those cases, "[w]here prison security measure is undertaken to resolve a disturbance ... that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

Typically, the balancing standard from *Whitley* is applied in cases where excessive force is alleged in reacting to and quelling a specific prison disturbance. The Supreme Court has not directly addressed the situation, as presented in the case at bar, where a policy is adopted to address an issue of prison discipline and order. In *Hudson*, the Supreme Court recognized that the *Whitley* standard is applicable not only to prison disturbances but also to "lesser disruptions." The Court recognized the need to accord to prison administrators "'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Hudson*, 503 U.S. at 6 (quoting *Whitley* 475 U.S. at 321-22). The Court also recognized that such deference extends as well "to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Whitley*, 475 U.S. at 322. The Supreme Court held that "[w]hether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates." *Hudson*, 503 U.S. at 6. Thus, the defendants argue that it appears that the Supreme Court

8

would apply this balancing standard to any claims where the Eighth Amendment challenge is directed at a policy or practice, such as the pink jumpsuit provision at issue in this litigation, implemented to preserve internal order and discipline or to maintain institutional security.

Under either the deliberate indifference standard or the *Whitley* standard, the plaintiff's claim fails. Using the deliberate indifference standard as applied to conditions cases, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the United States Supreme Court held that the Eighth Amendment requires prison officials to "provide humane conditions of confinement." *Id.* at 832. "[P]rison officials must take reasonable measures to guarantee the safety of inmates." *Id.* (citation omitted). Recognizing that "not ... every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety," the Court held that an Eighth Amendment violation is found only upon a showing of both an objective and a subjective requirement. *Id.* at 834.

In addressing the objective prong, the Supreme Court has explained that "[f]or a claim ... based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. The objective prong "requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

There is no evidence in the record to demonstrate the plaintiff has suffered any actual injury as a proximate result of the pink-colored jumpsuit portion of the disciplinary policy, nor does the plaintiff cite evidence of any threats of violence. The plaintiff's complaint references only a possibility of harm (comp. 9) and refers to verbal harassment,

9

stating he is called a "pink flamingo by prison officials" (comp. 4). Furthermore, there is no evidence in the plaintiff's extensive SCDC inmate file that he has ever filed a grievance, or any other documents, alleging that he has been physically assaulted as a result of his wearing of the pink-colored jumpsuit, nor does his complaint refer to any specific incident of assault proximately caused by him wearing a pink-colored jumpsuit. In fact, SCDC Director Ozmint testified that, to his knowledge, no inmate has been assaulted because of wearing the pink jumpsuit (Ozmint aff. ¶ 38). As the Supreme Court recently stated in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (internal citations omitted). Here, the plaintiff makes a series of unsupported conclusory assertions regarding potentialities, not actualities.

As argued by the defendants, given the absence of any actual harm, the plaintiff's claim devolves into one which, at most, asserts a claim of verbal harassment. This is not the stuff of cruel and unusual punishment. Not every unpleasant experience a prisoner may face, like verbal abuse or harassment, constitutes cruel and unusual punishment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). "[R]udeness and name-calling does not rise to the level of a constitutional violation." *Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir.2000).

The plaintiff also alleges that his movements are restricted by being placed in the pink jumpsuit. There is no evidence that the movement restrictions placed on the

plaintiff pose any unreasonable threat of serious injury. The plaintiff's housing and movement are clearly calculated precisely for the purpose of increasing safety and security. Nor is there any evidence the plaintiff has or could suffer any constitutional injury as a proximate result of his housing assignment. In fact, the record demonstrates that the plaintiff was allowed to participate in recreation and other programs (Ozmint ¶ 29), although possibly not at the time and in the manner he deemed convenient. However, the fact that the plaintiff may have been inconvenienced, or dissatisfied, fails to state either an unreasonable risk of harm or a constitutional deprivation. Likewise, there is no evidence of any injury proximately caused by restrictions on the plaintiff's movement within the facility. Instead, the evidence demonstrates that the movement restrictions are precisely for the purpose of preventing harm to inmates and staff. In sum, there is no evidence of a single instance of the plaintiff being harmed because he was wearing a pink-colored jumpsuit. Additionally, the plaintiff has not shown that the risk of harm is not one to be tolerated by society in response to the problems experienced by SCDC officials with sexual misconduct and in particular exhibitionism and public masturbation.

As to the subjective prong, "[t]he question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future heath.'" *Farmer*, 511 U.S. at 843 (quoting *Helling*, 509 U.S. at 35). In *Helling*, the Supreme Court explained that "the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct." *Helling*, 509 U.S. at 36. The Court recognized that "[t]he inquiry into this factor also would be an appropriate vehicle to consider arguments regarding the realities of prison administration." *Id.* at 37.

As addressed at length in the affidavits of SCDC Director Jon Ozmint and former Warden Burtt, numerous important penological interests are advanced by the use of the pink jumpsuits in enforcing the policy prohibiting exhibitionism and public

11

masturbation (Ozmint aff. ¶¶ 8). The existing sanctions for sexual misconduct were not working to reduce the incidence of sexual misconduct (Ozmint aff. ¶¶ 26,27). This contributed to the belief among many corrections personnel that they were powerless to respond effectively to control the exhibitionism and public masturbation. That belief contributed to morale problems among staff and high turnover of staff, which lead to increased costs necessitated by the expense of recruiting and training new employees (Ozmint aff. ¶¶15-19, 27). Another concern to Director Ozmint is his responsibility to try to prevent his employees from being subjected to a hostile work environment (Ozmint aff. ¶¶ 19-22). Director Ozmint testified that the use of the pink jumpsuits allows staff, officers, and visitors to take appropriate precautions when dealing with inmates having a propensity to commit acts of exhibitionism and public masturbation (Ozmint aff. ¶¶ 35-36). The pink jumpsuit policy is a deterrent to this misconduct because many SCDC inmates have expressed a dislike for the pink jumpsuits (Ozmint aff. ¶¶ 35, 37; *see* def. m.s.j., ex. D, Dr. Donna Schwartz-Watts dep.).

The plaintiff has failed to come forward with any evidence that the defendants have knowingly and unreasonably disregarded any substantial risk of serious harm to him by the continued enforcement of the disciplinary policy requiring inmates convicted of sexual misconduct to wear pink jumpsuits for a period of time. Furthermore, the restrictions on the plaintiff's movement are the result of reasoned penological considerations (Burtt aff. ¶¶ 31-37). Accordingly, the plaintiff's claim fails under a deliberate indifference standard.

In analyzing the plaintiff's claims using the standard announced in *Whitley v. Albers*, 475 U.S. 312 (1986), which the defendant argues is more appropriate for security-related claims such as the ones at issue in this litigation, the analysis of the objective prong is the same as that discussed above. With respect to the subjective prong, the *Whitley* standard requires the court to balance the need to maintain or restore discipline against the risk of injury to the inmates. The Court in *Whitley* explained that the force, or

in this case, the policy implemented to preserve internal order and discipline and to maintain institutional security, is constitutional where "applied in a good faith effort to maintain or restore discipline." 475 U.S. at 320. Such a policy is unconstitutional only where applied "maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21.

As argued by the defendants, they have demonstrated that the pink jumpsuit portion of the inmate disciplinary policy serves numerous legitimate and important penological interests that outweigh any risk of harm to the plaintiff. Moreover, the evidence in the record clearly shows the policy has been enforced in a good faith effort to maintain discipline and to foster institutional safety and security as well as the other penological interests identified. Further, SCDC Director Ozmint testified that, to his knowledge, no inmate has been assaulted because of wearing the pink jumpsuit (Ozmint aff. ¶ 38). The evidence also demonstrates that the movement restrictions reduce the security and supervision burden placed on the staff. Consequently, the reduced staffing burden allows better monitoring of inmates, thereby increasing institutional security.

Based upon the foregoing, the plaintiff's pink jumpsuit allegation does not constitute cruel and unusual punishment prohibited by the Eighth Amendment.

The plaintiff also alleges a conditions of confinement claim, asserting he was housed in a cold holding cell for three days with no bed or mat (comp. 3). Even assuming the deprivation of a basic human need was sufficiently serious, the plaintiff has failed to show that the prison officials, and specifically defendant Brihart, acted with a sufficiently culpable state of mind. Conclusory allegations, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). Further, the plaintiff has failed to allege that defendants Burtt, Ozmint, or Rowe personally acted or failed to act with regard to these allegations. The doctrine of *respondeat superior*

generally is inapplicable to § 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). The plaintiff has failed to show any basis for supervisory liability. Based upon the foregoing, the claim fails.

***Work Credits***

The plaintiff further contends that his constitutional rights have been violated because, as a result of being placed in the pink jumpsuit, the only jobs he may do are in the unit where he lives. He claims that as a result he cannot earn work credits (comp. 5). However, according to the testimony of former Warden Burtt, inmates assigned to wear pink jumpsuits may earn work credits within their dorms (Burtt. aff. ¶ 23). All inmate job assignments are subject to the institution's needs, and inmates do not have any fundamental constitutional right to any specific work assignment. *Ingram v. Papalia*, 804 F.2d 595, 596-97 (10th Cir. 1986); *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978); *Delaney v. Ozmint*, C.A. No. 4:05-1968-HFF-TER, 2006 WL 1878982, *8 (D.S.C. July 5, 2006). Based upon the foregoing, this claim fails.

*Ridgeland Correctional Institution*

The plaintiff also makes various allegations regarding alleged constitutional deprivations arising after he was transferred from Lieber to Ridgeland. "It is well-settled that '[i]n order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Davis v. D.S.S. of Baltimore Cty.*, No. 90-1864, 1991 WL 157258, *5 (4th Cir. 1991) (quoting *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985)). The named defendants were not assigned to Ridgeland at the times relevant to the plaintiff's complaint. The plaintiff has failed to demonstrate the personal involvement of each of these defendants in his alleged deprivations. Accordingly, these claims fail.

*Qualified Immunity*

The defendants also argue that, to the extent the plaintiff raises his claims against them in their individual capacities, they are entitled to qualified immunity. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

15

Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity on these claims.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 78) be granted. Furthermore, and for the same reasons, this court recommends that the plaintiff's "motion to dismiss the defendants' motion for summary judgment" (doc. 85) be denied.

s/William M. Catoe
United States Magistrate Judge

August 6, 2009

Greenville, South Carolina